

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION


| | |
|---|---|
| LAWRENCE DANIEL HIGGINS, | § |
| | § |
| Petitioner, | § |
| | § |
| v. | § |
| | § |
| NATHANIEL QUARTERMAN, Director, | § |
| Texas Department of Criminal Justice, | § |
| Correctional Institutions Division, | § |
| | § |
| Respondent. | § |

2:04-CV-0154


## REPORT AND RECOMMENDATION TO DENY
## PETITION FOR WRIT OF HABEAS CORPUS

Petitioner LAWRENCE DANIEL HIGGINS has filed with this Court a Petition for a Writ

of Habeas Corpus by a Person in State Custody challenging his state court conviction and sentence.

For the reasons hereinafter set forth, it is the opinion of the undersigned United States Magistrate

Judge that the petition for a writ of habeas corpus should be DENIED.


I.
FACTUAL HISTORY

The evidence at petitioner's trial was that the victim, one Juan Pacheo, was found murdered

in his apartment. Fingerprints at the murder scene were eventually linked to petitioner. City of

Amarillo police officers went to the police station in El Paso, Texas and interrogated petitioner.

Petitioner, after being *Mirandized*, gave a statement to the police. In that statement, petitioner said

he met the victim at a bar in Amarillo and accompanied the victim (Pacheco) to Pacheco's

apartment. Petitioner said that as a result of sexual advances from the victim directed at petitioner, that petitioner became afraid and hit the victim in the head with a dumbbell weight but only intended to knock him out. Even though petitioner also admitted tying the victim up after hitting him and admitted he (petitioner) began to rob the victim of compact discs, he told police he never intended to kill the victim.

At trial, petitioner testified to events similar to those in his statement, and testified he never intended to kill the victim. The jury convicted petitioner of murder, rejecting petitioner's claims of self-defense and sudden passion.[1]

## II.
## PROCEDURAL HISTORY

On October 25, 2000, in Randall County, Texas, petitioner was indicted for the offense of murder in Cause No. 13,352-A, styled *The State of Texas v. Lawrence Daniel Higgins*. Specifically, the indictment alleged petitioner:

> [O]n or about the 16th day of May, A.D. 1998 . . . did then and there intentionally and knowingly cause the death of an individual, to-wit: Juan J. Pacheco, by striking him with a blunt object.

On September 13, 2001, in the 47th Judicial District Court of Randall County, Texas, a jury found petitioner guilty of murder as alleged in the indictment,[2] and further found, by a preponderance of the evidence, that petitioner was not under the immediate influence of sudden passion arising from an adequate cause at the time of the commission of the murder. The jury then sentenced petitioner to thirty-five (35) years imprisonment and assessed a $10,000 fine. On September 14, 2001, trial

---

[1] A more detailed summarization of the facts of the crime, as set forth by the State on direct appeal, are attached hereto as Appendix "A."

[2] Declining to find petitioner acted in self defense.

counsel filed a motion to withdraw as attorney of record citing petitioner's attacks on the competence of counsel and the deteriorating condition of the attorney-client relationship as cause for the withdrawal. The trial court granted counsel's motion the same day.

Petitioner, represented by new appointed counsel, timely appealed his conviction and sentence to the Court of Appeals for the Seventh District of Texas at Amarillo. On June 14, 2002, the state appellate court affirmed petitioner's conviction in an unpublished opinion. *Higgins v. State*, No. 07-01-0384-CR. Petitioner sought review of the intermediate appellate court's decision by filing a petition for discretionary review ("PDR"). In his PDR, petitioner alleged (1) trial court error in precluding the admission of character evidence in the nature of the victim's prior homosexual acts; and (2) trial court error in failing to suppress petitioner's confession alleged to have been made after a 1-hour prep session, after threat of capital prosecution, and after petitioner was rewarded with cigarettes. On October 2, 2002, the Texas Court of Criminal Appeals refused petitioner's PDR. *Higgins v. State*, No. 1348-02.

On December 30, 2002, petitioner filed a pro se state application for a writ of habeas corpus challenging the constitutionality of his conviction. *Ex parte Higgins*, No. 54,723-01. On January 29, 2003, the Texas Court of Criminal Appeals dismissed this first state writ application for noncompliance with state appellate rules.[3] On March 3, 2003, petitioner refiled his state writ application on the prescribed form. *Ex parte Higgins*, No. 54,723-02. In his application, petitioner asserted the following grounds which had previously been raised and rejected on direct appeal:

    1.    The trial court abused its discretion in excluding evidence of the victim's previous aggressive sexual conduct as such evidence was necessary to show the victim was the aggressor in order to support petitioner's sudden passion

---

[3]Petitioner's grounds and rendition of the facts were not set out on the prescribed form as required by Tex. R. App. Proc. 73.2.

defense;

2. The trial court abused its discretion in excluding the above-referenced evidence *sua sponte* without an objection from the State;

3. The trial court erred by failing to give the full definition of causation set forth in the Texas Penal Code; and

4. The trial court abused its discretion by not suppressing petitioner's recorded statements.

Petitioner also asserted:

5. Petitioner was denied due process and the right to compulsory service of witnesses when the trial court denied his motions for a continuance in order to secure witnesses who would testify as to the victim's character;

6. Petitioner was denied a fair and impartial trial because the trial judge indicated, prior to trial, his belief that petitioner was guilty of the charged offense;

7. Petitioner was denied effective assistance of trial counsel;

8. Petitioner was denied a fair trial because the jury was permitted to see petitioner in handcuffs;

9. Petitioner was denied a fair trial because, during voir dire, two venire persons opined about parole laws in the presence of the venire;

10. The trial court erred in charging the jury on parole;

11. Petitioner was denied due process by the trial court's refusal to allow him to represent himself at trial; and

12. Petitioner was denied effective assistance of appellate counsel.

On May 21, 2003, the Texas Court of Criminal Appeals denied petitioner's habeas application without written order. On June 15, 2004, petitioner placed the instant petition for federal habeas corpus relief in the prison mailing system.

III.
PETITIONER'S ALLEGATIONS

In this federal application, petitioner contends his conviction is in violation of the

Constitution and laws of the United States for the following reasons:

1.      Petitioner was denied due process and a fair trial because the trial court:

      a.      erred in not allowing petitioner to present evidence of the victim's
prior acts of sexually aggressive homosexual behavior, through the
lead investigator's testimony, to support a self-defense or sudden
passion defense;

      b.      erred by denying petitioner's motion for continuance to secure the
testimony of two witnesses who would have testified as to the
victim's prior acts of sexually aggressive homosexual behavior;

      c.      had formed an opinion of petitioner's guilt prior to trial;

      d.      misinstructed the jury at punishment concerning good time and parole
law;

      e.      improperly denied petitioner's request to represent himself at trial,
thereby forcing petitioner to go to trial with incompetent counsel; and

      f.      erred in denying petitioner's motion to suppress his confession as
involuntary because petitioner was threatened by law enforcement to
give a recorded statement or face the death penalty.

2.      Petitioner was denied due process and a fair trial because the State failed to
attempt to locate and compel the attendance of the two witnesses subpoenaed
by the defense;

3.      Petitioner was denied effective assistance of counsel because trial counsel
failed to seek out and interview any witnesses, conduct an independent
investigation, or ascertain petitioner's version of the case prior to trial; and

4.      Petitioner was denied effective assistance of appellate counsel because
appellate counsel refused to follow petitioner's instructions.

# IV.
## STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254, supplies the proper standards for reviewing rulings on claims adjudicated on the merits in state court proceedings. *Smith v. Dretke*, 417 F.3d 438, 441 (5th Cir. 2005). As to legal issues, federal habeas corpus relief should not be granted unless the state court's adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "The state court's application of the law must be 'unreasonable' in addition to being merely 'incorrect.'" *Caldwell v. Johnson*, 226 F.3d 367, 372 (5th Cir. 2000). "Stated simply, a federal habeas court making the 'unreasonable application' inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

As to factual issues, federal habeas corpus relief should not be granted unless the state court's "decision [] was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding. 28 U.S.C. § 2254(d)(2). "[A] determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

In his state habeas application, petitioner challenged his conviction on the same grounds raised in the instant federal petition. The Texas Court of Criminals Appeals denied petitioner's state habeas application without written order. The ruling of the Texas Court of Criminal Appeals

on the grounds presented constitute an adjudication of petitioner's claims on the merits. *Bledsue v. Johnson,* 188 F.3d 250, 257 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex.Crim.App. 1997) ("In our writ jurisprudence, a 'denial' signifies that we addressed and rejected the merits of a particular claim while a 'dismissal' means that we declined to consider the claim for reasons unrelated to the claim's merits.").

V.

## STATE COURT ADJUDICATIONS

The Texas Court of Criminal Appeals has denied petitioner relief on the claims he raises herein. *See Ex parte Higgins*, No. 54,723-02; *see also Higgins v. State*, PDR No. 1348-02. As set forth above, before he can obtain federal habeas relief, petitioner must show the state court's legal decisions were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

In the instant federal petition, accompanying memorandum, and amendment to the memorandum, petitioner has reurged the same allegations from his PDR and state habeas application. Petitioner has failed to show the state's high court unreasonably applied clearly established federal law as determined by the Supreme Court. Such a showing is mandatory in order to receive federal habeas relief. Consequently, with regard to each of the claims raised herein, petitioner has failed to meet his threshold burden in order to be entitled to federal habeas relief under the AEDPA and each of the grounds should be denied on this basis.

VI.

## MERITS

Federal habeas corpus will not lie unless an error was so gross or a trial so fundamentally

unfair that the petitioner's constitutional rights were violated. In determining whether an error was so extreme or a trial so fundamentally unfair, this Court must review the putative error at issue, looking at the totality of the circumstances surrounding the error for a violation of the petitioner's constitutional rights.

A.

Trial Court Error

Claims 1(a)-(f)

Petitioner argues his conviction is in violation of the United States Constitution because of trial court error committed during his trial. To warrant federal habeas relief, any trial court error must do more than merely affect the verdict; it must render the trial as a whole fundamentally unfair. *Bailey v. Procunier*, 744 F.2d 1166, 1168 (5th Cir. 1984). To show trial court error rendered the trial fundamentally unfair, a petitioner must show a reasonable probability that the verdict would have been different had the trial been conducted properly, that is, without the trial court error. *Rogers v. Lynaugh*, 848 F.2d 606, 609 (5th Cir. 1988). Therefore, to obtain federal habeas corpus relief, a petitioner must show not only that constitutional error occurred, but also that the error resulted in "actual prejudice," *i.e.*, if the error "had substantial and injurious effect or influence in determining the jury's verdict." *See Brecht v. Abrahamson*, 507 U.S. at 637-38, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993).

Specific Instances of Conduct

Petitioner argues the trial court erred in not allowing petitioner to question the lead police investigator concerning the victim's "previous acts of aggressive homosexual behavior." Petitioner contends the investigator's file contained a statement from a witness to the effect that the victim

picked up the witness just as the witness was released from jail, took the witness to his home, allowed the man to live in the victim's house for two weeks, but then threw the witness out of his home when the witness refused to have sexual relations with the victim. 3 SF 8-12. Petitioner contends the file also contained a statement from another witness to the effect that the victim, just prior to talking to petitioner, had purchased beer for the witness for 2-3 hours, told the witness if he needed a place to stay or to shower could do so at the victim's apartment, but that the witness did not go with the victim because he found the offer strange and was a "little bit afraid" of the victim. *Id.* Petitioner contends evidence of these previous instances of conduct was necessary (1) to prove petitioner's claim of self defense, by showing the victim was the aggressor, and (2) to prove petitioner's claim of sudden passion, by showing the victim's intent to sexually assault petitioner.

Prior to trial, the State filed a motion in limine requesting the trial judge order petitioner to refrain from referring to any extraneous specific instances of alleged misconduct of the victim without first obtaining a ruling on the admissibility of such acts outside the presence of the jury. Tr. 66-70. At the pretrial hearing on the State's motion, petitioner did not object to the State's motion in limine, instead arguing the prosecution would probably open the door to such evidence when petitioner's confession was introduced into evidence at trial. 2 SF 41-46. The trial judge granted the State's motion in limine, but advised he would not make an evidentiary ruling regarding the alleged specific acts of the victim's misconduct until it was offered at trial. 2 SF 46.

During the State's case-in-chief, defense counsel advised the Court he intended to question the investigating officer, who was on the stand, concerning the victim's ex-roommate and "any past sexual situations with [the victim]" which, counsel opined, were "pretty important to the [] ex-roommate's status." In response the Court ruled, without an initiating objection by the State, that

counsel could not question the officer concerning "specific acts of misconduct," but could elicit

testimony concerning knowledge of, or opinion of, the victim's character traits, *i.e.*, the victim's

homosexuality.[4]  4 SF 66-67.  Defense counsel proceeded to question the officer concerning objects

found in the victim's apartment which could be used in homosexual activity,[5] but did not question

the officer concerning statements of witnesses obtained during his investigation concerning specific

acts of misconduct on the part of the victim.  The defense subsequently elicited testimony of the

victim being a homosexual, 5 SF 115, but did not make any subsequent attempts to elicit testimony

or introduce evidence of the victim's purported specific extraneous instances of conduct.

    The undersigned does not find trial court error in the exclusion of this evidence.  First, the

testimony petitioner contends should have been allowed was inadmissible hearsay.  Second, under

Texas law, parties are generally prohibited from introducing an individual's specific instances of

conduct to prove character conformity on the date in question.  Tex. R. Evid. 404(b).  Any

testimony that the victim had (1) on a previous occasion, bought another man beer and offered to

allow him to shower and stay at the victim's apartment, and (2) picked up another man, allowed that

man to stay at the victim's apartment but eventually evicted the man from the apartment for his

alleged failure to perform sexual acts with the victim, would have simply been an attempt by

petitioner to show the victim was acting in conformity therewith on the date in question – an

impermissible basis for admitting such evidence.  *See* 3 SF 10 (petitioner advised the victim's prior

acts would have shown "his conformity – what his practice is, what he usually did); 3 SF 13

(petitioner advised the victim's prior acts would have shown the victim was acting "in conformity"

---

[4]The trial court, however, expressed its concern as to how counsel would be able to elicit testimony of such character traits of the victim through the investigating officer.

[5]Petitioner also asked the medical examiner about tests conducted on the victim for substances used for sexual stimulation.  4 SF 123-24.

therewith); 4 SF 6 (petitioner advised the testimony would be to prove the character and conformity of the victim).

In this petition, however, petitioner claims the victim's character was an essential element of his self defense claim and the specific instances of conduct evidence were needed to prove such character. Petitioner's claim of self defense to justify his use of deadly force required a showing that (1) petitioner reasonably believed deadly force was necessary to protect himself against the victim's use or attempted use of unlawful deadly force, and (2) that a reasonable person in petitioner's situation would not have retreated. Tex. Pen.Code Ann. §§ 9.31(a), 9.32(a) (1998). Under Texas law, a victim's character is not an essential element of a claim of self defense. *Tate v. State,* 981 S.W.2d at 192 n. 5 (Tex.Crim.App. 1998). Moreover, to the extent petitioner argues the referenced specific acts of the victim should have been admitted to show the victim was the first aggressor in this case, the specific acts in issue were not acts of violence nor were they evidence of the victim's character for violence. Consequently, the specific acts of conduct of the victim herein identified were not relevant to petitioner's claim of self defense.

Petitioner also asserted he caused the victim's death under the immediate influence of sudden passion arising from an adequate cause in order to mitigate punishment. Tex. Pen. Code Ann. § 19.02(d). Petitioner claims the victim's character was an essential element of this sudden passion theory of defense and the specific instances of conduct evidence were needed to prove such character. Sudden passion "means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." *Id.* § 19.02(a)(2). In other words, it is "an excited and agitated mind at the time of the killing caused by an act of the deceased." *Hobson*

*v. State,* 644 S.W.2d 473, 478 n. 10 (Tex.Crim.App.1983). Adequate cause is a "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." Tex. Pen. Code Ann. § 19.02(a)(1). Petitioner contends evidence of the victim's specific instances of conduct would have supported his claim of sudden passion by showing the victim's intent was to sexually assault petitioner. The victim's intent is not an element of sudden passion. Further, the purported evidence of the victim's specific instances of conduct would not have provided proof of the victim's intent on the night in question. The specific acts of conduct of the victim herein identified were not relevant to petitioner's claim of sudden passion. As there was no trial court error in excluding evidence of the victim's specific instances of conduct, petitioner's trial was not rendered fundamentally unfair by the trial court's rulings.

Even assuming, solely for argument sake,[6] that the trial court erred in not allowing evidence of the victim's alleged specific instances of conduct, such error did not prejudice petitioner or render petitioner's entire trial fundamentally unfair. Petitioner has not shown how such evidence would have assisted in his defense. The purported specific instances of conduct evidence excluded during trial related only to the victim's propensity for homosexual behavior and did not, in any way, justify petitioner in killing or assaulting the victim.[7] Such statements would not have established that, at the time of the homicide in this case, petitioner reasonably believed deadly force was

---

[6]State evidentiary rulings, even if erroneous, are matters for federal habeas corpus review only if they are of such magnitude as to constitute a denial of fundamental fairness under the Due Process Clause. *Evans v. Thigpen,* 809 F.2d 239, 242 (5th Cir. 1987). Federal courts should not review the state court's interpretation of its own laws. *Weeks v. Scott,* 55 F.3d 1059, 1063 (5th Cir. 1995); *Moreno v. Estelle,* 717 F.2d 171, 179 (5th Cir. 1983).

[7]To have succeeded on his claim of self-defense, petitioner was required to show, *inter alia,* he was justified in using deadly force against the victim "when and to the degree he reasonably believed the force [was] immediately necessary to protect himself against [the victim's] use or attempted use of unlawful force," and that a reasonable person in the [petitioner's] situation would not have retreated. Tex. Penal Code § 9.32(a)(2) and (3)(A).

12

immediately necessary, and that a reasonable person in petitioner's situation would not have retreated.

Lastly, the undersigned finds no federal constitutional violation by the trial court's ruling. Even assuming, purely for argument sake, the exclusion of the specific instances of conduct testimony was improper, this exclusion at a state trial does not warrant federal habeas corpus relief so long as the accused's right to present a defense was not impaired. *Trussell v. Estelle*, 699 F.2d 256, 262 (5th Cir. 1983). Petitioner testified he met the victim at a bar and accompanied him back to the victim's apartment. 5 SF 138-41. While at the apartment, petitioner claimed the victim made sexual advances towards him. 5 SF 143-44. Petitioner also testified he was uncomfortable with the sexual advances and asked the victim to give him a ride back to the bar. 5 SF 143. The jury was presented with petitioner's unrebutted testimony that the victim made sexual advances toward him and that such advances were unwelcome. Additional evidence of specific instances of conduct on the part of the victim was not necessary to raise the issues of self defense or sudden passion mitigation. Indeed, the jury was instructed on both self defense and sudden passion without any additional evidence of specific instances of conduct of the victim. Tr. 82, 91. The jury rejected the validity of petitioner's claims of self-defense and sudden passion. Petitioner's right to present a defense was not impaired by the exclusion of such testimony. Petitioner has failed to demonstrate the required prejudice and, thus, is not entitled to relief on this claim.

<u>Denial of Petitioner's Motion for Continuance</u>

Petitioner next argues the trial court erred in denying his oral motions for continuance to secure the testimony of the two witnesses whose specific instances of conduct testimony petitioner alleged was material and would support his defensive claims of self defense and sudden passion

(discussed above).  Prior to trial, petitioner asked for at least a two-week continuance in order to

find these witnesses referenced in a police investigation report.[8]  3 SF 11.  Petitioner argued these

witnesses would testify to the effect that (1) the victim picked up the witness just as the witness was

released from jail, took the witness to his home, allowing the man to live in the victim's house for

two weeks, but then evicted the witness from his home when the witness refused to have sexual

relations with the victim, and (2) the victim, just prior to talking to petitioner, had purchased beer

for the witness for 2-3 hours, told the witness if he needed a place to stay or to shower could do so

at the victim's apartment, but that the witness did not go with the victim because he found the offer

strange and was a "little bit afraid" of the victim.  3 SF 8-9.  Petitioner also argued another witness

would testify that the victim "often rode the streets of Amarillo trying to meet men."  3 SF 9.  In

response, the trial court stated, "Well, so far you haven't told me anything that they could testify to

that was material to the facts of your case."  3 SF 9.  In response, petitioner explained:

> They could testify to the way he acts, his – the way he always acted.  His character.
> I mean, I – all over the rules of evidence I could show his character....  What his
> conformity – what his practice is, what he usually did.  3 SF 9-10.

Petitioner further argued:

> I really need some witnesses to put on this stand to testify to this man's prior
> character before he met me.  I mean, my testimony isn't going to be worth nothing.  I
> have a record.  I mean, I've been in trouble before.  I never assaulted no one.  I have
> no history of violence, but still I have a record of theft and stuff like that, receiving
> stolen property.  I mean, my testimony is not going to be worth a damn.  I'm going to
> have to put somebody on the stand that can testify to this man's prior character.

> I mean, if I put two people on that stand to say that right before he met me, he picked
> up another man and brought him to his home, or tried to pick him – bought this man
> beer for two to three hours and then told him if you need a place to stay or a shower,
> you can come to my place, and this man says right in his statement that, "I didn't go

---

[8]Petitioner also sought a continuance at pretrial hearings based on the fact that defense counsel had only been appointed approximately 40 days earlier.  2 SF 50.

with him because I thought he was funny.  I was a little bit afraid of him." . . .  The other man . . . would testify to the fact that he was picked up, met this guy, he just got out of jail. . . and this guy was riding around and he rode by and then he waved to him, and then he rode back by him, and he says, you want to make a couple of dollars, brought him over to his house, let him wash his car for 12 dollars, he paid him 12 dollars, and he said well, if you need a place, you can stay with me.. . .  Two weeks later, he threw him out . . . because he wouldn't have sexual – you know, wouldn't perform sex with him.  He wouldn't go to bed with him.  3 SF 11-12.

Petitioner also explained:

And I mean, I really need these people to testify, and another one that will testify to [the deceased] being violent.  He – this other man he work with told him – the deceased told him that he was in a fight at the same bar where he met me, and he took a knife off the guy and beat him down.  And then he also told this guy that he was robbed one time and that he'd get them himself, he'd handle it himself, to testify to this man's previous violent behavior.  I mean, this man knocked me down.  He tried to make me do things, Your Honor.  I mean, you know, I had no choice in the matter there.

When the trial court asked how much of this knowledge petitioner had at the time he was at the victim's house, petitioner replied, "None."  The trial court explained what petitioner knew at the time of the homicide was, in fact, important and denied petitioner's motion for continuance.  3 SF 12-13.

During the trial, petitioner again asked for a continuance in order to find the two missing witnesses.  4 SF 6.  Defense counsel advised the Court:

Your Honor, we've made extensive attempts to locate these people.  We found that one has a warrant out and the other, we were told has a warrant out, but we haven't confirmed that.  We'll have access to the same instrumentality that the DA does, but we assume whenever a probation officer indicates there's a warrant out for someone's arrest, that there probably is. . . .  Thus, we don't know that the State can even find these people at this point.  I believe that, specifically at punishment, character may become an issue.  And that they may – their testimony may be important at that point.

The court instructed defense counsel to "continue to search for them during the trial" and denied the continuance.  4 SF 7.

At the beginning of the defense's case, petitioner took the stand and acknowledged he had told defense counsel not to worry about calling witnesses whose testimony would be severely limited by the State's motion in limine and the trial court's evidentiary rulings so far. Petitioner acknowledged the defense had six (6) witnesses under subpoena at the time, that defense counsel intended to call those witnesses even though some were against counsel's strategical decisions, that petitioner had only provided defense counsel with a list of witnesses he wished to call only two (2) days prior, and that some had been found while others had not. 5 SF 62-64.

Almost immediately after his testimony, petitioner requested another continuance, noting counsel had only had the case "for 35 days," that they were "just going today and getting witnesses," and that the investigator had been working all week during the trial to try to get witnesses the defense "could have had since the beginning." 5 SF 67. Defense counsel responded:

> Your Honor, I believe in his testimony from the stand, some of these witnesses, we – he testified that he had instructed us not to mess with that theory of the case. And thus, we have stayed away from them. We've read their statements and have had questions about the admissibility of their statements, different things along the way that made them questionable witnesses to begin with.
>
> There are also some witnesses who are under subpoena now, and I don't believe they have gotten here yet. But we're expecting them any moment, who – it's against every judgment bone in my body to call them to the witness stand. And I've been instructed to call them, so I've subpoenaed them and found them. . . .

5 SF 67-68. The trial court again denied petitioner's motion for continuance. 5 SF 69. The defense ultimately called six (6) witnesses, including the petitioner, and recalled the lead police investigator, in its case.

Again, in claiming trial court error (in failing to grant petitioner a continuance in order to secure the testimony of certain witnesses), petitioner must show any error committed by the trial court rendered the entire trial fundamentally unfair, thus denying petitioner due process, by showing

a reasonable probability that the verdict would have been different had the trial been conducted without the error. Petitioner cannot show the trial court's denial of a continuance to secure the witnesses referenced by petitioner rendered his entire trial fundamentally unfair.

Petitioner has not shown the trial court's grant of a continuance would have resulted in the appearance at trial of the witnesses petitioner sought.[9] Nor has petitioner demonstrated the witnesses would have, in fact, testified at trial. *Cf. Alexander v. McCotter,* 775 F.2d 595, 602 (5th Cir. 1985) (citing *Boyd v. Estelle,* 661 F.2d 388, 390 (5th Cir. 1981)); *Gomez v. McKaskle,* 734 F.2d 1107, 1109-10 (5th Cir. 1984). Nor has petitioner shown, by affidavit or otherwise, what the witnesses' testimony at trial would have been. *Cf. United States v. Cockrell,* 720 F.2d 1423, 1427 (5th Cir. 1983). Instead, petitioner merely offers his own conclusory statements, without any evidentiary support, as to the purported testimony of these witnesses. A petitioner's bald assertions, unsupported and unsupportable by anything contained in the record, are not to be afforded probative evidentiary value on habeas review. *See Ross v. Estelle*, 694 F. 2d at 1011 (citing *Woodard v. Beto*, 447 F. 2d 103 (5th Cir. 1971)). Conclusory speculation is insufficient.

Lastly, and critically, as noted in the discussion of petitioner's previous claim, the testimony petitioner suggests would have been given by the unidentified witnesses was not admissible as specific instances of conduct, nor was it relevant, and most likely would not have been admitted by the trial court. Petitioner has not shown the trial judge erred in denying petitioner's requests for continuance.

---

[9]The undersigned notes petitioner has not identified for this Court the witnesses he was seeking and needed a continuance to find, leaving the Court to speculate as to the actual identities of the witnesses.

## Denial of Impartial Judge

Petitioner contends he was denied due process and a fair trial because the trial court had formed an opinion of petitioner's guilt prior to trial and, thus, petitioner was denied an impartial or neutral judge at trial. At the conclusion of a pre-trial hearing held on September 7, 2001, and in response to the trial judge's query as to whether there were any other matters that needed to be discussed, the following exchange took place:

PETITIONER: Yeah, I'd like to ask – the – the State has had ample time to go over this case, I mean, almost a year. This attorney had this case for 40 days, Your Honor. I think it's ridiculous for us to start trial on a murder trial. I mean, this is my life here. You're putting this attorney on here. He's had 40 days to get things ready. I mean, that's no time. This guy is faxing stuff to the wrong office. I mean, I want a continuance. I mean, we should definitely have a continuance. There's no way in hell this guy should be ready in 35 days to hold a murder trial. Come on.

TRIAL JUDGE: I understand your position, but your continuance motion is denied.

PETITIONER: That's bullshit.

TRIAL JUDGE: Say that again and you'll get it stacked on top of whatever sentence you get.

PETITIONER: What did you say, Your Honor?

TRIAL JUDGE: You'll have a contempt citation on top of whatever sentence you're assessed.

PETITIONER: Now you're finding me guilty already, you're saying . . .

TRIAL JUDGE: No, sir. I'm saying you better not say that again or you'll have a contempt citation anyway. Do you understand me?

PETITIONER: (No audible response).

BAILIFF: Answer the question.

| | |
|---|---|
| PETITIONER: | Yeah, yes, sir. I understand. |
| TRIAL JUDGE: | All right, sir. |
| PETITIONER: | I'd like to note that I'm duly objecting to that motion. I just – I object to that – to the denial of that continuance. |
| TRIAL JUDGE: | Fine. You've objected to it. I've ruled on it. We'll see you Monday. |
| PETITIONER: | I'm getting railroaded here, it what (sic) -- |
| TRIAL JUDGE: | What did you say, sir? |
| PETITIONER: | I said I want to talk to him. |
| TRIAL JUDGE: | Is that what he said, Mr. Watkins? |
| MR. WATKINS: | Your Honor, I wasn't listening to him. I don't – |
| BAILIFF: | He said you were trying to railroad him, Judge. |
| TRIAL JUDGE: | That's what I thought he said. |
| PETITIONER: | I was talking to him. |
| TRIAL JUDGE: | You were talking to him, that he's trying to railroad you? |
| PETITIONER: | Yeah, I mean, he's not – |
| TRIAL JUDGE: | Mr. Higgins, you are cited for contempt of this Court. You will show this Court respect, even under your breath. Six months in jail now. Starting today. Anything else, Mr. Higgins? |
| PETITIONER: | Request a change of venue. |
| TRIAL JUDGE: | Denied. |

2 SF 50-52.

At a pretrial hearing immediately before trial started, petitioner again advised the trial court

that he "showed prejudice at the pretrial" and again requested a change of venue. 3 SF 15-16.

Noting the trial judge's comment that the contempt sentence was to run on top of whatever sentence he was to get after trial, petitioner explained his belief that the statement showed prejudice in that it indicated the trial judge had already found him guilty of the charges. The trial judge overruled petitioner's motion for a change of venue with the comment, "That is balderdash." Petitioner does not argue any other actions and/or statements of the trial judge indicated the judicial officer's lack of neutrality, nor does petitioner cite specific instances of prejudicial rulings by the trial judge which resulted in petitioner being denied due process or a fair trial.[10]

The undersigned finds the above statements of the trial court did not demonstrate the trial court's belief of petitioner's guilt prior to trial, nor indicate prejudice by the trial judge against petitioner that tainted the fairness of petitioner's trial. The trial judge, in fact, showed considerable restraint. In warning petitioner he would be cited for contempt if he continued to misbehave while in the courtroom, the reference to any contempt sentence being stacked did not necessarily evidence prejudice on the part of the trial judge. Instead, such comment could be construed as merely advising petitioner of the seriousness of his contemptuous conduct and the fact that any sentence for contempt would be served consecutively to any sentence he might receive for murder. At the most, the trial judge's statements did not go beyond "expressions of impatience, dissatisfaction [and] annoyance," *see Liteky v. United States*, 510 U.S. 540 (1994), and did not indicate a prejudice or partiality requiring recusal or rendering petitioner's trial fundamentally unfair. The trial judge's statements did not evidence the degree of deep seated antagonism necessary to make fair judgment impossible. Consequently, the state trial court's remarks of which petitioner complains, while exhibiting frustration with petitioner's outburst and lack of judicial respect, even if improper, which

---

[10]The jury, rather than the trial judge, found petitioner to be guilty of the charged offense and assessed petitioner's sentence.

this Court does not find them to be, were not sufficiently egregious as to have denied petitioner a fair trial. Petitioner's claim should be denied.

Jury Instruction on Parole Law and Good Time

Petitioner contends he was denied due process and a fair trial because the trial court misinstructed the jury at punishment concerning good time and parole law. The Charge of the Court instructed as follows:

> Under the law applicable in this case, the defendant, if sentenced to a term of imprisonment, *may earn time off the period of incarceration imposed through the award of good conduct time*. Prison authorities may award good conduct time to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any good conduct time earned by the prisoner.

> It is also possible that the length of time for which the defendant will be imprisoned might be reduced by the award of parole.

> Under the law applicable in this case, if the defendant is sentenced to a term of imprisonment, he will not become eligible for parole until the actual time served equals one-half of the sentence imposed or 30 years, whichever is less, without consideration of any good conduct time he may earn. If the defendant is sentenced to a term of less than four years, he must serve at least two years before he is eligible for parole. Eligibility for parole does not guarantee that parole will be granted.

> It cannot accurately be predicted how the parole law and good conduct time might be applied to this defendant if he is sentenced to a term of imprisonment, because the application of these laws will depend on decisions made by prison and parole authorities.

> You may consider the existence of the parole law and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular defendant. You are not to consider the manner in which the parole law may be applied to this particular defendant.

> You are not to discuss among yourselves how long the accused would be required to serve the sentence that you impose. Such matters come within the exclusive jurisdiction of the Board of Pardons and Paroles division of the Texas Department of

Criminal Justice and the Governor of the State of Texas, and must not be considered by you.

Tr. at 92- 93.  Petitioner objected to the inclusion of the above language in the charge as follows:

[W]e realize that the Code of Criminal Procedure prescribes it shall be in there.  We believe that it's extremely confusing to a jury to say, here's some parole law.  Now don't consider it.

7 SF 91-92.  The trial court overruled petitioner's objection.  The jury subsequently found petitioner was not under the immediate influence of sudden passion arising from an adequate cause when he caused the death of the victim, and assessed petitioner's punishment at 35 years confinement.

Petitioner argues the charge was erroneous because the language "may earn time off the period of incarceration imposed through the award of good conduct time," led the jury to believe petitioner, a 3g offender with an affirmative finding with regard to the use of a deadly weapon, "could reduce his sentence through good behavior when in fact he could not."  The undersigned construes this claim to be an argument that the jury was misled into believing petitioner could receive time off his sentence, *i.e.*, through mandatory supervised release, when the only manner in which he can obtain an earlier release is through parole.  Petitioner may also be arguing the jury was misled into believing the award of good time could result in his earlier release to parole when, in fact, any award of good time does not affect his eligibility for parole because he is required to serve one-half of his sentence, without consideration of good time credits, before being eligible for parole.        At the time petitioner committed the charged offense and at the time of his trial, state law required the trial court to charge the jury in writing with the specific language set forth in Article 37.07 § 4 of the Texas Code of Criminal Procedure.  Trial courts were not given discretion to alter the language, nor could they forego such an instruction.  Here, the trial court's jury instruction tracked the language of the statute as required by state law.  To the extent petitioner

challenges the trial court's inclusion of the instruction and its compliance with state procedural rules, such complaint presents a question of state law only which is not cognizable in a federal habeas corpus proceeding.  Petitioner argues, however, that the statutorily mandated instruction does "not accurately apply the law to the facts" and, thus, the state mandated instruction itself "rises to constitutional levels of due process denials and denies a fair impartial trial."  In effect, petitioner is arguing the state statute is unconstitutional as applied to him.  The state's highest court has held that the statutory instruction is not unconstitutional even when applied to an ineligible defendant. *Luquis v. State,* 72 S.W.3d 355, 365 (Tex.Crim.App. 2002).  This court must defer to the state court's interpretation of state law.  Petitioner's claim should be denied.

<u>Denial of Right to Self-Representation</u>

Petitioner contends his constitutional right to self-representation was violated by the trial judge's denial of his request to represent himself at trial.  Petitioner further argues such denial forced petitioner to trial with incompetent counsel resulting in a denial of due process and a fair trial.

At a pre-trial hearing held immediately prior to voir dire examination, petitioner addressed the trial court, complaining of his defense counsel's representation.  Petitioner asserted appointed counsel, Mr. Watkins, had been on the case 35-40 days, but had not discussed the case with petitioner and had only subpoenaed two (2) witnesses identified by petitioner for trial.  3 SF 5-6. Petitioner advised he "really  wish[ed]" he could get a continuance and a different attorney. Petitioner further expressed, "I need an attorney.  I really need a real attorney.  I need more time.  I don't have enough time."  Petitioner advised they were not prepared to proceed with the trial.  3 SF 7.  The trial court,  noting counsel had more than the statutory ten days to which he was entitled in

order to prepare for trial, queried Watkins whether he was ready for trial.  Watkins advised he was "as ready" as he could be for the trial, but that there were some witnesses he had been unable to locate and that the witnesses probably could not be located in the next thirty days.  3 SF 8.  Apparently reconsidering, petitioner advised he just needed more time, "maybe not even a different attorney."  Thereafter, Watkins moved to withdraw as counsel, which the trial court denied.  3 SF 13.  Later, petitioner again stated, "I really need more time.  I need a different counsel."  The trial court, however, advised petitioner he did not have more time and did not have different counsel.  The trial court, after querying petitioner concerning his experience in the criminal system and his educational background, asked petitioner if he was able to defend himself at trial.  3 SF 14-15.  Petitioner responded, "I really don't think I'll be able to totally defend myself.  I would need assistance.  You know, I could sure as hell try."  3 SF 15.  In response, the trial judge explained:

> We do not have such a thing as hybrid representation in Texas.  You either have a lawyer or you don't have.  If you want to try to represent yourself, I may permit you to do that but I'm not going to let you have a lawyer and yourself acting as a lawyer.  At this time, your motions are denied.  Mr. Watkins will remain your counsel until I'm notified otherwise.

Petitioner's objections to the trial court's rulings were noted on the record.  After further discussion unrelated to this issue, petitioner asked if the trial court let him provide himself counsel, would the trial judge then give him a continuance to prepare for trial.  3 SF 17.  Explaining petitioner had already had time to prepare for trial, the trial judge stated he would not grant a continuance if he allowed petitioner to represent himself.  The trial judge further stated, "[A]t this point, I don't believe you have the capacity to represent yourself effectively, so I'll deny your motion if you choose to replace Mr. Watkins."

The constitutional right to effective assistance of counsel also embraces the right to defend

*pro se*.  *Faretta v. California,* 422 U.S. 806 (1975).  Invocation of the right to self representation, however, must be "clear and unequivocal" and must be made in a timely manner.  *See Chapman v. United States,* 553 F.2d 886, 892-93 (5th Cir. 1977)."

Based on the transcript of the pre-trial hearing, the undersigned finds petitioner never affirmatively waived his right to counsel or unequivocally asserted his right of self-representation.  *Cf. Brown v. Wainwright,* 665 F.2d 607, 610-11 (5th Cir. 1982) ("Even if defendant requests to represent himself, however, the right may be waived through defendant's subsequent conduct indicating he is vacillating on the issue or has abandoned his request altogether.").  Consequently, the trial court's decision to compel petitioner to proceed to trial with appointed counsel was proper, and there was no constitutional violation.  Petitioner's ground should be denied.

<u>Failure to Suppress Confession</u>

Petitioner argues he was denied due process and a fair trial because the trial court erroneously denied his motion to suppress his confession.  In a motion to suppress filed with the state trial court on August 30, 2001, petitioner argued his confession was not voluntary because "it was the result of improper inducements on the part of the Potter/Randall County Special Crimes and/or the El Paso Police Department in that Defendant was told he would be given an inducement to talk with the officers: to wit, a cigarette."  Tr. 63-64.  On September 7, 2001, the trial court conducted an evidentiary hearing on petitioner's motion.  During the hearing, one of the interrogating officers testified he did not threaten petitioner in any way.  2 SF 16.  In response to cross-examination at the conclusion of the hearing, petitioner testified, "Well, they gave me a cigarette and then he threatened me – told me that if I didn't talk that the county here would seek the death penalty on me."  2 SF 27.  After final arguments, the trial court denied petitioner's motion

to suppress.  Tr. 65.

On September 12, 2001, during trial, the interrogating officer specifically denied expressing to petitioner that if he did not tell what he knew, the officer would make sure he was charged with capital murder.  5 SF 16.  On September 13, 2001, defendant testified the interrogating officer told him that if he "didn't tell them what happened they would seek the death penalty on [him]," 5 SF 157, that the officer suggested the State might be seeking the death penalty in the case, but told him if he would tell them what happened, the State would not seek the death penalty.  6 SF 59.  After being recalled for additional testimony, the interrogating officer explained he did tell petitioner "in reference to the death penalty that the facts and circumstances around this case indicated it could be perceived as a death penalty case if, in fact, there was a murder in conjunction with theft of property of a robbery."  6 SF 71.  On that same day, the jury returned a verdict finding petitioner guilty.

On October 12, 2001, the trial court entered findings of fact and conclusions of law on the admissibility of petitioner's confession finding therein that any benefit of the detectives providing petitioner with a cigarette was not of such character as would be likely to influence defendant to speak untruthfully.  Tr. 118-22.  The trial court did not address petitioner's testimony that he had been threatened.

On direct appeal of his conviction, petitioner again alleged his confession was involuntary based on the totality of the circumstances, including, *inter alia*, the inducement of cigarettes and the officer's alleged statement that the State would seek the death penalty against him if he did not give a statement.  In overruling the point, the appellate court held:

> Whether the trial court erred in refusing to suppress a confession depends upon whether it abused its discretion. *Villareal v. State*, 935 S.W.2d 134, 138 (Tex.Crim.App. 1996).  And, we will not disturb the ruling if supported by the record. *Arnold v. State*, 873 S.W.2d 27, 34 (Tex.Crim.App. 1993).  Furthermore, the

trial court is the sole factfinder at the hearing. *Id*. This entitles it to judge the weight and credibility of the witnesses and their testimony and accept or reject all or any part of the testimony of any witness, including those of the State or the defense. *Snow v. State*, 721 S.W.2d 943, 946 (Tex. App.-Houston [1st Dist.] 1986, no pet.). So, we must defer to its resolution of pivotal factual disputes.

. . .

We address first the matter of threatening the appellant with the death penalty unless he spoke. This particular ground was never mentioned below. Indeed, both in his motion to suppress and at the suppression hearing, [petitioner] merely alluded to the temptation of a cigarette as improper inducement. Given that it went unmentioned below, it cannot be the basis for a reversal on appeal. *See Holberg v. State*, 38 S.W.3d at 140.

. . .

Thus, evidence of record supports the trial court's decision, and it cannot be considered an abuse of discretion.

*Higgins v. State*, at 5-6. Petitioner again raised this issue, asserting both inducement and coercion, in his PDR as well as in his state application for habeas corpus relief.

The state appellate court fully addressed petitioner's claim on this issue, making specific factual findings, and determined the trial court did not abuse its discretion in failing to suppress the statement. Petitioner has not shown the state court's legal findings were contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States. The Texas Court of Criminal Appeals refused discretionary review of this issue, and denied this issue on the merits on habeas corpus review. The State of Texas has clearly provided an opportunity for full and fair litigation of petitioner's claims with respect to the validity of his confession, and petitioner has failed to demonstrate the state courts' rulings were incorrect, much less objectively unreasonable. Petitioner is not entitled to federal habeas corpus relief with regard to this claim.

B.
State's failure to locate and secure witnesses

Petitioner next argues he was denied due process and a fair trial because the State made no attempt to locate, and secure the attendance of, the two unidentified witnesses who were subpoenaed by the defense for their testimony of the victim's prior extraneous specific instances of conduct. Petitioner contends his Sixth Amendment right of compulsory process was violated because, although he was issued the requested subpoenas, the State made no attempt to locate the absent witnesses or secure their attendance at trial for the defense.[11] Petitioner contends the Sixth Amendment's right of compulsory process requires the prosecution's assistance in compelling the attendance of the defense's witnesses at trial. Petitioner acknowledges the Sixth Amendment does not require that the State be successful in compelling the witnesses' presence, only that process issue and due diligence be exercised in a good faith attempt to secure service of process of the subpoena.

Petitioner has not cited this Court to any authority, and the undersigned has found none, stating that the right to compulsory process places an additional affirmative duty on the State to enforce the defendant's exercised right to compulsory process. The right does not require the State to try the defense's case, nor does it require the State to produce evidence of which petitioner was already aware. Moreover, the State's failure to further investigate witnesses whose statements were included in the police investigation report which was provided to petitioner did not render petitioner's trial fundamentally unfair. *Cf. Johnston v. Pittman*, 731 F.2d 1231, 1234 (5th Cir. 1984) (the Constitution requires the prosecution to reveal material evidence favorable to the defendant

---

[11]The trial court did instruct the State to "check with law enforcement agencies to make sure" they were actively pursuing warrants out for the two witnesses. 4 SF 7.

upon defendant's request, but due process does not require the state to pursue every possible avenue of investigation and make defendant's case for him.).

Moreover, to show a violation of the constitutional right, the defendant must show more than that he was deprived of certain testimony; he must instead "make some plausible showing of how [that] testimony would have been both material and favorable to his defense." *United States v. Valenzuela-Bernal,* 458 U.S. 858, 102 S.Ct. 3440, 3446, 73 L.Ed.2d 1193 (1982). As discussed above, petitioner has not made such a showing. Petitioner has failed to show the violation of a right secured to him by the United States Constitution.

## C.
## Effectiveness of Trial Counsel

Petitioner contends he was denied effective assistance of trial counsel because appointed counsel "began a murder trial without interviewing any State's witnesses or knowing his client's version of the altercation." In his memorandum, petitioner argues defense counsel went to trial totally unprepared, never sought out or interviewed any witnesses, refused client instruction, never asked petitioner what happened on the night in question, and failed to conduct an independent investigation into the factual bases of the State's charges. During the state habeas proceedings, defense counsel submitted an affidavit addressing petitioner complaints stating, in part:

> I was appointed . . . to represent Mr. Higgins approximately forty-eight days prior to trial. On my appointment I was provided complete access and even provided a complete copy of the State's file to aid my preparation. Prior to my being appointed, Mr. Randy Hopper had been appointed as a private investigator [Tr 15] and he was able to aid me in preparing for trial. Shortly after I was appointed to represent [petitioner], I did meet with him in the Randall County Jail and discussed with him the various options and defenses available to us. [Petitioner] indicates that I did not ask him what happened the night of the murder. This is untrue. Whenever I would ask him, he would go off on a tangent and discuss many different aspects of his defense, but would fail to tell me his side of the story. He did confirm to me in our

discussion preparing for trial, in the pre-trial hearing on the Motion to Suppress, and to the jury at trial that his statement taken in El Paso, was primarily correct.

As to the allegation that I failed to have a firm command of the facts or review the State's evidence, or interview the State's witnesses, I would respond that I spent a lot of time reviewing the State's evidence and getting a firm command of the facts. I believe my trial performance indicates my preparation. I interviewed the appropriate State's witnesses and reviewed every State's witness statement prior to trial. Time was short to prepare, however, I feel that I was fully prepared and in full command of the relevant facts.

The next issue that I wish to respond to is the issue of breach of attorney/client privilege. [Petitioner] indicates that during trial I breached attorney/client privilege by informing the court of a proposed line of questioning of one of the State's witnesses. This is a situation where after many attempts of [petitioner] to get a continuance by attacking my abilities, credibility, and preparedness, I misspoke and indicated that the information that I was discussing with the court was potentially attorney/client privilege.

Upon cool reflection, I realized that it was not in any way attorney/client privilege. As a matter of fact, I had been instructed to ask these questions, thus there is no way that he could want me to keep them privileged. As the record reflects, I was instructed to ask Sergeant Paul Horn of the Special Crimes Unit if he was homosexual. I did not believe this to be a good question. I saw no relevance even though homosexuality was at issue in this trial, and I decided not to ask the question. When [petitioner] indicated that I refused to follow his trial instructions and that I should be removed as trial counsel, I informed the court as to this matter and [petitioner] has continued to this day that that was attorney/client privilege. . . . .

In conclusion, I was provided with adequate time to complete the investigation of the case and to thoroughly review the facts, potential trial strategies, applicable law and consequences with [petitioner] and I did so. My decisions constituted reasonable trial strategy under the circumstances of this particular case.

The state courts denied petitioner habeas relief on the merits.

In order to constitute ineffective assistance of counsel, counsel's performance must have

fallen below an objective standard of reasonableness as determined by the norms of the profession.

Counsel's performance is reviewed from counsel's perspective at the time of trial, not from

hindsight. *Strickland v. Washington*, 466 U.S. 668, 689, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). A

reviewing court's scrutiny of trial counsel's performance is highly differential, requiring the court to presume counsel has rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690; *Amos v. Scott*, 61 F.3d 333, 347-48 (5th Cir. 1995).

In order to show trial counsel rendered ineffective assistance, a petitioner must show defense counsel's performance was deficient. This requires showing counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment to the United States Constitution. A petitioner must also show counsel's deficient performance prejudiced the defense by showing counsel's errors were so serious as to deprive petitioner of a fair trial. To prove prejudice, petitioner must show (1) there is a reasonable probability that, but for counsel's unprofessional errors, the ultimate result of the proceeding would have been different, and (2) that counsel's deficient performance rendered the trial fundamentally unfair. *Creel v. Johnson*, 162 F.3d 385 (5th Cir. 1998). A showing of *significant* prejudice is required. *Spriggs v. Collins*, 993 F.2d 85, 88, n. 4. (5th Cir. 1993). Further, the court need not even consider the deficiency prong if no prejudice has been demonstrated.

Conclusory allegations in support of a claim of ineffectiveness of counsel, unsupported by any specific facts, do not merit federal habeas relief. *Ross v. Estelle*, 694 F.2d at 1011-12. The court must examine the proceedings as a whole, giving due consideration to the weight of the evidence supporting the verdict and evaluating the alleged failings of counsel in that total setting. *Moore v. Johnson*, 194 F.3d 586 (5th Cir. 1999).

After examining the proceedings as a whole, the undersigned finds trial counsel's representation of petitioner was not deficient. The deficiencies and omissions petitioner alleges are,

in most part, refuted by defense counsel's affidavit which the state habeas courts found to be credible in denying relief. Petitioner has failed to rebut defense counsel's averments, leaving nothing more than petitioner's conclusory allegations in support of his claims.

Trial counsel's decision to forego calling the two witnesses who, at the time, were unavailable, did not constitute grievous legal error as noted in previous discussion. Additionally, petitioner has failed to show how further investigation by his trial counsel would have aided his cause. A petitioner alleging inadequate investigation must show what such investigation would have uncovered and how his defense would have thereby benefitted. *Nelson v. Hargett*, 989 F.2d 847, 850 (5th Cir. 1993); *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986). Petitioner cannot "simply allege but must affirmatively prove prejudice" when complaining of counsel's failure to investigate. *Wilkerson v. Collins*, 950 F.2d at 1065. As discussed above, the two additional witnesses, even if they could have been found, would have appeared, and would have testified as petitioner claimed, their testimony would not have benefitted petitioner's defense. Moreover, counsel cannot be deemed ineffective for failing to call witnesses who are not shown to have been available and willing to testify. *Lockhart v. McCotter*, 782 F.2d 1275, 1282 (5th Cir. 1986); *Gomez v. McKaskle,* 734 F.2d 1107, 1110 (5th Cir. 1984).

Petitioner's allegations of deficiency are refuted by the record, and petitioner has not demonstrated he was prejudiced by trial counsel's performance. The mere fact that the jury found petitioner guilty does not establish petitioner's attorney rendered ineffective assistance or that the outcome of the proceedings would have been any different had the alleged acts or omissions not occurred. Review of the record indicates counsel's actions appeared to be valid strategic decisions. Additionally, as noted under section IV., petitioner has not demonstrated the State courts'

adjudication of this issue was contrary to or involved an unreasonable application of clearly

established federal law or was based on an unreasonable determination of the facts in light of the

evidence presented in order to be granted federal habeas corpus relief.  28 U.S.C. § 2254(d).

Therefore, petitioner claim of ineffective assistance of trial counsel should be denied.

D.
Effectiveness of Appellate Counsel

Petitioner also contends appellate counsel, Maria Lopez, was ineffective for not including,

as grounds of error, numerous claims petitioner identified and wished to have included in his direct

appeal.  Petitioner concludes that as a result of appellate counsel's ineffective representation of

petitioner, "direct appeal was lacking many reversible errors."

Petitioner does not identify for this Court the grounds which he contends would have

asserted reversible error.  Consequently, this claim is conclusory and does not merit federal habeas

relief.

Even assuming, for purposes of argument only, that petitioner is arguing the grounds he

raises in this federal habeas action are the grounds appellate counsel should have raised on appeal,

petitioner has not demonstrated he was denied effective assistance of counsel.  An ineffective

assistance of *appellate* counsel claim is also analyzed under the two-pronged test enunciated in

*Strickland v. Washington.*  Thus, a petitioner must demonstrate appellate counsel was deficient, and

that the deficiency prejudiced his case.  *Strickland,* 466 U.S. at 687.  Counsel's errors are

prejudicial when there is a reasonable probability that, but for the error, the ultimate result would

have been different.  To prove prejudice, a petitioner must show that but for counsel's deficient

performance "he would have prevailed on appeal."  *Smith v. Robbins*, 120 S. Ct. at 764.

Appellate counsel's failure to raise certain issues on appeal does not deprive a petitioner of effective assistance of counsel if the petitioner cannot show the existence of any trial errors with even arguable merit. *Hooks v. Roberts*, 480 F.2d 1196, 1198 (5th Cir. 1973). Additionally, "[i]t is not required that an attorney argue every conceivable issue on appeal, especially when some may be without merit. Indeed, it is his professional duty to choose among potential issues, according to his judgment as to their merit and his tactical approach." *Jones v. Barnes,* 463 U.S. 745, 749 (1983). No authority suggests "the indigent defendant has a constitutional right to compel appointed counsel to press non-frivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points." *Id*. at 751.

Appellate counsel filed an affidavit in petitioner's state habeas proceeding in rebuttal to petitioner's allegations of ineffective assistance. *See Ex parte Higgins*, No. 54,723-02, at 67-69 (Affidavit of Maria Lopez). After examining the record as a whole, the undersigned finds appellate counsel's representation of petitioner was not deficient. The deficiencies and omissions petitioner alleges are, in most part, refuted by defense counsel's affidavit which the state habeas courts found to be credible in denying relief. Petitioner has not shown any of the issues raised herein would have changed the result of petitioner's direct appeal. Consequently, petitioner has failed to prove deficient performance on the part of appellate counsel caused him prejudice.

Further, the state habeas court determined this claim was without merit and denied habeas relief. Petitioner has not demonstrated the state court's determination was in conflict with clearly established Federal law as determined by the Supreme Court or that it was "based on an unreasonable determination of the facts in light of the evidence." 28 U.S.C. § 2254(d). Accordingly, relief must be denied. 28 U.S.C. § 2254(d). Petitioner is not entitled to relief on this

allegation and said claim should be denied.

## VII.
## RECOMMENDATION

It is the RECOMMENDATION of the United States Magistrate Judge to the United States District Judge that the petition for a writ of habeas corpus filed by petitioner LAWRENCE DANIEL HIGGINS be DENIED.

## VIII.
## INSTRUCTIONS FOR SERVICE

The United States District Clerk is directed to send a copy of this Report and Recommendation to each party by the most efficient means available.

IT IS SO RECOMMENDED.

ENTERED this <u>29th</u> day of August 2007.

_____
CLINTON E. AVERITTE
UNITED STATES MAGISTRATE JUDGE

## * <u>NOTICE OF RIGHT TO OBJECT</u> *

Any party may object to these proposed findings, conclusions and recommendation. In the event a party wishes to object, they are hereby NOTIFIED that the deadline for filing objections is eleven (11) days from the date of filing as indicated by the "entered" date directly above the signature line. Service is complete upon mailing, Fed. R. Civ. P. 5(b)(2)(B), or transmission by electronic means, Fed. R. Civ. P. 5(b)(2)(D). When service is made by mail or electronic means, three (3) days are added after the prescribed period. Fed. R. Civ. P. 6(e). Therefore, any objections must be <u>filed</u> **on or before the fourteenth (14th) day after this recommendation is filed** as indicated by the "entered" date. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); R. 4(a)(1) of Miscellaneous Order No. 6, as authorized by Local Rule 3.1, Local Rules of the United States District Courts for the Northern District of Texas.

Any such objections shall be made in a written pleading entitled "Objections to the Report

and Recommendation." Objecting parties shall file the written objections with the United States District Clerk and serve a copy of such objections on all other parties. A party's failure to timely file written objections to the proposed findings, conclusions, and recommendation contained in this report shall bar an aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings, legal conclusions, and recommendation set forth by the Magistrate Judge in this report and accepted by the district court. *See Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996); *Rodriguez v. Bowen,* 857 F.2d 275, 276-77 (5th Cir. 1988).